The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Haigh. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award.
* * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. Plaintiff, who is 39 years old and quit school in the eighth grade after failing second and eighth grades, has been legally blind in his left eye since age 18 months and he has been deaf in the left ear for about 15 years. He worked primarily as an electrician's help for about 18 years up to June 1991. That employment involved heavy physical labor, including lifting in excess of 100 pounds and moving 2000 pound reels. Additional work experience includes jobs as a painter for one year, as a boiler operator for three years, as a caddy and grounds helper at golf courses for approximately four years and has as a laborer in floor and roof installation for about three years.
2. Plaintiff sustained an injury by accident giving rise hereto on June 9, 1991 when he experienced back pain trying to force a gate closed. He was initially treated conservatively at Durham Urgent Care and then received conservative treatment from Dr. Liebelt beginning September 13, 1991.
3. Following diagnostic testing, Dr. Liebelt ultimately performed lumbar decompression at L4-5 and L5-S1 and fusion from L4 to the sacrum on February 18, 1992 for treatment of degenerative disc disease at L4-5 and L5-S1, with herniated nucleus pulposus at L4-5. Postoperative treatment included back brace, back stretch exercises, walking, and physical therapy.
4. On examination by Dr. Liebelt on July 17, 1992, plaintiff had no pain on flexion and extension of the lumbar spine, he was able to flex to nearly touching his toes with his fingertips, and there was some tenderness at the bone graft site which was not an uncommon finding. Dr. Liebelt's findings and the notes of the physical therapist corroborated each other — there was no direct relationship between certain exercises and complaints of pain upon doing physical therapy exercises. Dr. Liebelt restricted him to light duty activity with a ten pound lifting limitation and avoidance of bending and stooping and he recommended vocational retraining and a functional capacities evaluation in one month.
5. On examinations on July 28 and August 21, 1992, plaintiff had very good lumbar flexion, extension, and lateral bending and the objective findings on both examinations did not correlate much with his complaints of pain. On August 9, 1992 plaintiff had fallen and dislocated his right elbow for which he received conservative treatment and because of that injury, Dr. Liebelt placed him on range of motion exercise with a lifting restriction. Said physician also recommended that the planned vocational assessment be done in about two-three weeks when plaintiff would have better motion in the elbow.
6. On July 29, 1992 plaintiff met with Jane Coburn, rehabilitation consultant with Southern Rehabilitation Network, Inc., for an initial vocational assessment. As a result, she formulated a rehabilitation plan for plaintiff to attend a situational assessment at Raleigh Vocational Center (RVC) to identify transferrable skills, work tolerance and behavior, work readiness, and vocational interests. On August 6, 1992 plaintiff was seen by Dr. Frank for an independent medical examination after which Dr. Frank recommended that plaintiff continue on physical therapy with an ongoing functional assessment.
7. On September 2, 1992 plaintiff met with Coburn and Kathryn Lamm, evaluation services manager of RVC, at RVC at which time an initial interview, orientation, and academic testing, including paper and pencil tasks, were conducted. The initial mininal two weeks in the program after September 2 were designed to determine plaintiff's general physical stamina as related to work and his sit/stand tolerances. On September 3, plaintiff called RVC and related that due to increased back pain in part as a result of activities at RVC, he could not attend. He thereafter failed to return to RVC until September 14.
8. Following examination of plaintiff on September 11, 1992, Dr. Liebelt encouraged plaintiff to participate in the RVC program and he encouraged him to continue his walking which he had reduced, he again admonished plaintiff, who was still smoking heavily, to stop smoking, and he placed him on a 30 pound lifting restriction as well as avoidance of excessive bending, stooping, and squatting.
9. Plaintiff thereafter attended RVC from September 14 through September 17 and on September 23, and from September 28, 1992 through the first week of October, 1992. He never thereafter participated in the program. During that time, he worked at four different jobs: filing meter boxes, packaging insoles, binding boxes, and assembling boxes. Plaintiff's tasks in those four different jobs were within the restrictions established by Dr. Liebelt. Evidence to the contrary is not accepted as credible. In particular, the meter box job could be performed without bending by either standing straight or sitting straight. Although binding boxes involved some bending, it did not require excessive bending. The insole job could be performed by turning the body as opposed to twisting.
10. While plaintiff was participating in the RVC program, Lamm advised him on several occasions that if any of the tasks caused him increased pain, he should notify her or the staff so that he could be taken off the job and change to another one, take additional breaks, or leave early if the pain was too severe to continue. Plaintiff did not, however, relate to Lamm that any specific task was hurting him until after he stopped participating the program. He did complain about back pain and some leg pain when he was on the floor and he complained to Dr. Liebelt about pain he experienced in the program.
11. Plaintiff was thereafter examined by Dr. Liebelt on October 23, 1992 at which time he recommended that plaintiff return to the RVC program. Dr. Liebelt had previously reviewed RVC's written description of plaintiff's work tasks and on or about October 13, 1992, in a written response to a memorandum from Southern Rehabilitation Network, he approved them as being within plaintiff's capacity. On October 23 plaintiff stated that he would return to RVC on October 26 and try for two weeks.
12. Because x-rays did not show a solid bony fusion but rather a lesser amount of bone than normally seen and because plaintiff continued to complain of pain, Dr. Liebelt discussed with him on October 23 the possibility of a re-operation. Dr. Liebelt, however, did not recommend the surgery unless plaintiff quit smoking because smoking influences the amount of bone growth and solidity of a fusion, there being an increased risk of pseudarthrosis, and pain relief is not as great for smokers as it is for non-smokers. Prior to the February 1992 surgery, he had recommended that plaintiff stop smoking and he agreed to try. Plaintiff initially tried gum and other methods to stop smoking prior to surgery and thereafter he unsuccessfully tried nicotine patches in January 1993. In addition, plaintiff was financially unable to attend a smoking cessation clinic. It is judicially noticed that nicotine in cigarettes is a powerful addiction which can be very difficult to overcome.
13. On October 22, 1992, Corburn contacted plaintiff to advise that Dr. Liebelt had approved the RVC program and she requested plaintiff to return to RVC and let Lamm know if he needed to change either positions or jobs. On October 26, 1992 when she again contacted plaintiff, he told her that he would not return to RVC because it hurt too much, that Dr. Liebelt would have to release him, and that he would try to get disability benefits.
14. On November 10, 1992, Dr. Liebelt released plaintiff from his care as having reached maximum medical improvement and as having 15 percent permanent partial impairment of the lumbar spine. He thereafter saw plaintiff in January and February 1993 and again reiterated his recommendation concerning vocational retraining. In February 1994, plaintiff was examined and evaluated by Dr. Price, Jr. who recommended a complete work-up again because of chronic back pain, with the first recommended physician for the work-up being Dr. Craig Derian.
15. Pursuant to the Form 21 Agreement and Award, defendants paid compensation to plaintiff for temporary total disability from August 22, 1991 to January 6, 1993 by reason of the injury by accident of June 9, 1991.
16. By Form 24 dated December 1, 1992, defendants sought Commission approval to stop payment of compensation benefits to plaintiff on grounds that he had not complied with medical treatment. By her December 17, 1992 letter to plaintiff, the Commission's Chief Claims Examiner ordered plaintiff to pursue prescribed medical and advised him that his benefits were contingent upon the same.
17. The evidence fails to establish that plaintiff made any reasonable efforts to comply with the Commission's Order dated December 17, 1992. Defendants' Form 24 was thereafter approved by the Commission on January 4, 1993.
18. Plaintiff, who has lost confidence in Dr. Liebelt as his treating physician, has requested Commission approval to select another physician to assume the care and treatment in his case.
19. Plaintiff's refusal to follow Dr. Liebelt's recommendation that he participate in the RVC program, after being ordered to do so by the Commission, was unjustified.
20. Plaintiff obtained the end of the healing period from the injury by accident giving rise hereto and the treatment rendered therefore on November 10, 1992 and he sustained 15 percent permanent partial impairment of the back as a result of said accident.
* * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. Plaintiff's refusal to comply with the Commission Order dated December 17, 1992 was unjustified under the circumstances and is a bar to his receipt of further compensation for temporary total disability. G.S. § 97-25.
2. Plaintiff reached the end of the healing period on November 10, 1992 and he retains 15 percent permanent partial impairment of the back as a result of the injury by accident giving rise hereto for which he is entitled to compensation at the rate of $277.33 per week for a period of 45 weeks commencing on January 6, 1993. G.S. § 97-31(23).
3. Plaintiff's request that Dr. Derian assume care and treatment in his case is hereby APPROVED. G.S. § 97-25.
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. Plaintiff's claim for temporary total disability benefits beyond January 6, 1993 is hereby DENIED.
2. Subject to counsel fee hereinafter approved, defendants shall pay compensation to plaintiff at the rate of $277.33 per week for a period of 45 weeks commencing on January 6, 1993. All of said compensation having accrued, it shall be paid in a lump sum without commutation.
3. A reasonable attorney in the amount of $1,000.00 is hereby approved for plaintiff's former counsel, Michael Anderson, and the same shall be deducted from the compensation payable to plaintiff and shall be paid directly to said attorney.
4. A reasonable attorney in the amount of $2,119.00 is hereby approved for plaintiff's current counsel, Daniel Read, and the same shall be deducted from the compensation benefits payable to plaintiff and shall be paid directly to said attorney.
5. Defendants shall pay all medical expenses incurred by plaintiff for treatment of the injury by accident giving rise hereto, including those to be incurred for plaintiff's examination and evaluation by Dr. Derian, when bills for the same shall have been submitted through defendant carrier to the Industrial Commission and approved by the Commission.
6. Defendants shall pay the costs, including an expert witness fee in the amount of $350.00 to Dr. Liebelt and in the amount of $250.00 to Dr. Price, Jr.
 S/ _____________________________ COY M. VANCE COMMISSIONER
CONCURRING:
S/ _____________________________ J. HOWARD BUNN, JR. CHAIRMAN
S/ _____________________________ J. RANDOLPH WARD COMMISSIONER
CMV/CNP/tmd